*FILED*

*03 MAR 11 AM 10: 58*

*U.S. DISTRICT COURT*
*N.D. OF ALABAMA*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| CAROL N. FOWLER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 01-B-2904-NW |
| | } | |
| FORTIS BENEFITS INSURANCE | } | |
| CO., | } | |
| | } | |
| Defendant. | } | |
| | } | |

**ENTERED**

**MAR 11 2003**

## MEMORANDUM OPINION

Currently before the court is a Motion to Reconsider the court's denial of the Motion to Remand the action to state court filed by Carol N. Fowler ("plaintiff" or "Fowler"). Also before the court is a Motion for Partial Dismissal of Plaintiff's Complaint or, in the Alternative, Motion for Partial Summary Judgment on Counts II through IV of Plaintiff's Complaint, a Motion to Strike Claim for Extracontractual and Punitive Damages, and a Motion to Strike Jury Demand filed by Defendant Fortis Benefits Insurance Co. ("defendant" or "Fortis"). Upon consideration of the record, the submissions of the parties, and the relevant law, the court holds that the motion to reconsider the court's denial of the motion to remand will be denied. The motions filed by defendant will be granted.

15

## FACTUAL SUMMARY[1]

The Anderson Companies is the parent company of Books-A-Million, Anderson News Company, Anderson & Anderson, and TNT Fireworks and Treat Entertainment ("Treat"). (Larry White Dep. at 10.) Fowler was employed by Treat and was covered under a group Long Term Disability ("LTD") policy issued by Fortis. Larry White was the Insurance and Safety Director for Treat during the time relevant to this action. (*Id.* at 11.) White's duties included managing the insurance policies for the companies, including Treat. (*Id.* at 14.)

**The Fortis Policy**

In approximately 1996, the officers and board of directors of Treat decided to offer group LTD coverage for its employees to ensure that employees of each of the Anderson Companies received the same level of benefits. (*Id.* at 16, 24-25, 30-32.) Treat asked White to find a suitable policy. (*Id.* at 16, 18.) Because Fortis Benefits was the insurer of the group life plan offered to its employees, White requested that Fortis discuss group LTD plans with him. (*Id.* at 22-23.) Fortis told White that if Treat would select its group LTD policy to include in its benefits plan, a Fortis representative would come to Treat to help "roll it out." (*Id.* at 24.) White determined that Fortis had the most competitive rates and presented the proposal to the officers and board of directors for Treat. (*Id.* at 26, 58.)

After reviewing the proposal, Treat's senior management decided that the LTD coverage was beneficial for its employees and instructed White to "roll it out." (*Id.* at 26.) Treat's

---

[1] The court notes that for the purpose of plaintiff's Motion to Remand, the factual and procedural history are not in serious dispute. (Pl.'s Resp. to Def.'s Opp. to Motion to Remand at 1.)

employees did not have a choice of which insurance company would issue the group policy, and LTD coverage from Fortis was the only offered. (*Id.* at 26-29.) A representative from Fortis explained to Treat employees what benefits were available under the plan. (*Id.* at 27.)

After the Fortis group policy was in place, White realized that the premiums for LTD benefits offered to Treat employees were different from the premiums being paid by employees of a new Anderson Companies' acquisition, TNT Fireworks. (*Id.* at 33-35.) White attempted to negotiate with Fortis to change the policy premiums, but Fortis refused to adjust the premiums because of the different risk factors associated with the two companies. (*Id.*) Also during the time the Fortis policy was in place, senior management at Treat asked White to determine what percentage of employees that received LTD benefits also received Social Security benefits. Because the Fortis policy provided a set-off for the amount of disability payments received by a plan participant from the Social Security Administration, Treat management was concerned about whether the LTD policy was providing a sufficient benefit for its employees. (*Id.* at 65.)

**Policy Administration**

Treat kept on file blank forms associated with the group LTD policy so that Treat could include them in "hire packets," which were distributed to new employees. (*Id.* at 41-42.) When an employee decided to enroll in the group LTD Plan, the employee would request an application from Treat. (*Id.* at 37, Exh. 2 to White Dep.) After the employee completed required personal information, management would explain to the employee the applicable premium rate to be deducted from their paycheck. (*Id.* at 37.) White would then forward a copy of the enrollment form to Fortis. (*Id.* at 37-38.) If an administrative problem regarding the Plan arose, White would contact Fortis to resolve the discrepancy. (*Id.* at 49-50.)

Each year, employees were required to renew their group LTD policy. (*Id.* at 53-54, Exh. 4 to White Dep.)  Treat's management would first determine whether or not the Fortis policy would continue to be offered to Treat's employees. (*Id.* at 55-56.)  After this decision was made, Treat would prepare[2] and distribute forms to all employees offering them options in level of coverage, premium payments, and the option of enrollment or termination of participation in the Plan. (*Id.* at 54-55, Exh. 4 to White Dep., 97-99.)

**Claims**

An employee's claim for benefits under the LTD policy was initiated by Treat's Human Resources department. (*Id.* at 62.)  When an employee had been out of work for a significant period of time, Human Resources Director, Debbie Clanton, would contact White to determine if the employee was eligible for LTD benefits. (*Id.*)  White would then obtain the necessary claims forms from Treat's files, and forward them to the employee. (*Id.*)  White or Clanton would instruct the employee on how to complete the form and inform the employee to return the completed form to Treat management. (*Id.* at 62-63, Exh. 8 to White Dep.)  Treat would forward the completed form to Fortis for a determination of benefits. (*Id.* at 62-63.)

When the employee was approved for LTD benefits, the first benefit payment would be sent to Treat. (*Id.* at 46.)  Upon receipt of the check, Treat would verify the benefit amount and make a copy for Treat's files. (*Id.*)  If there was a discrepancy, White or his staff would contact Fortis on behalf of the employee to resolve the problem. (*Id.* at 47-48.)  If there were no

---

[2] White rather than Fortis created a form for the renewal or cancellation of coverage. (White Dep. at 97-99.)

4

problems to be resolved, White would provide Fortis the address of the disabled employee and request that future benefit checks be sent directly to the participant. (*Id.* at 46, Exh. 31 to White Dep.) When an employee's coverage was due to end, White would gather the relevant information and forward it to Fortis for processing. (*Id.* at 58-60, Exh. 5 to White Dep.)

**Administration by a Third Party**

In approximately November 1998, Treat retained Aon Consulting ("Aon") as its broker to perform administrative duties associated with the insurance policies in its employee welfare benefit plan. (*Id.* at 67.)   Treat also utilized Aon to perform periodic reviews of the benefits offered to Treat employees to ensure that they were competitive. (*Id.* at 67-68.)  Around March 2001, Aon attempted to negotiate participant premium rates with Fortis. (*Id.* at 87-88.)  Fortis informed Treat management that they would not be able to lower the premiums and, instead, were requiring a twenty percent increase in premiums due to risk factors. (*Id.* at 88.)  Treat management, without input from Treat employees, then decided to terminate the group policy with Fortis and continue providing LTD benefits to its employees through a different insurer. (*Id.*)

**Plaintiff's Claim**

Plaintiff was covered under the group LTD insurance policy issued by Fortis. (Def.'s Notice of Removal, Exh. A ¶ 1.)  Plaintiff became disabled in April 1999, and filed a claim with Fortis. (*Id.*)  Fortis paid benefits of $800.00 per month under the plan to plaintiff through June 9, 2000, before they terminated her coverage for failure to comply with policy provisions. (*Id.* at ¶ 3, Exh C.)  The Social Security Administration found plaintiff disabled effective April 10, 1999. (*Id.* at ¶ 2.)  Plaintiff filed this action against Fortis in the Circuit Court of Lauderdale County,

5

Alabama, alleging breach of contract, fraud and misrepresentation, bad faith, and outrage. (Def.'s Notice of Removal, Exh. A.)  Plaintiff seeks trial by jury.  (*Id.*)

**Procedural History**

Fortis removed this action to federal court, contending that plaintiff's claims arise under the laws of the United States because they "relate to" an employee benefit plan under the Employment Retirement Income Security Act of 1974 ("ERISA").[3]  Plaintiff moved to remand, arguing that her claims do not "relate to" an employee benefit plan due to the exclusion from ERISA preemption contained in Department of Labor Regulation 29 C.F.R. § 2510.3-1(j)(3). The court denied the motion, and plaintiff filed a motion to reconsider.

Defendant has filed a motion to dismiss plaintiff's claims for fraud, bad faith, and outrage, arguing that those claims are preempted by ERISA.  Defendant has also moved to strike plaintiff's claims for extra-contractual and punitive damages because such damages are not available and plaintiff's demand for trial by jury because there is no constitutional or statutory right to a jury trial in an ERISA action.

## DISCUSSION

ERISA preempts all state law claims that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  An "employee benefit plan" or "plan" means "an employee welfare benefit plan," an "employee pension benefit plan," or a plan which is both a welfare plan and a pension plan.  29 U.S.C. § 1002(3).  In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir. 1982), the

---

[3]  In their Notice of Removal, defendants argue that, alternatively, the court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, because it is a civil action between citizens of different states where the matter in controversy exceeds $75,000.  Because the court asserts jurisdiction over this action on the basis of ERISA preemption rather than diversity jurisdiction, it is unnecessary to address the parties' arguments concerning diversity jurisdiction.

Eleventh Circuit construed "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1) to require: (1) a plan, fund, or program (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.  *Id.* at 1371.  However, an employer may be involved in a plan, fund, or program without establishing or maintaining it.  *Id.* at 1373, n.11.  The Code of Federal Regulations provides a "safe harbor" for certain employee benefit plans, which can protect the plan from ERISA's reach.  29 C.F.R. § 2510.3-1(j) (1997).   To qualify for the "safe harbor" exception, a plan must satisfy the following requirements:

> (1)  No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

*Id.*

Neither Fowler nor Fortis disputes that elements (1), (2), and (4) are met.  (Def.'s Supp. Brief Addressing ERISA Preemption at 10, Pl.'s Letter of May 30, 2002, in response to Def.'s Opp. to Remand.)  Fowler contends that all four elements are satisfied and that the plan at issue is protected by the safe harbor provision.  (Pl.'s Letter of May 30, 2002, in response to Def.'s

7

Opp. to Remand.)  Fortis, however, argues that the employer performed more functions than allowed by the provision and, therefore, that ERISA preempts plaintiff's claims.  (Def.'s Supp. Brief Addressing ERISA Preemption at 10-11.)  Because the court finds that all four elements are not met, the safe harbor provision set forth in 29 C.F.R. § 2510.3-1 does not apply, and ERISA controls.

In reaching its conclusion, the court relies heavily on *Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207 (11th Cir. 1999).  According to the court in *Butero*, "[29 C.F.R. § 2510.3-1(j)] explicitly obliges the employer who seeks its safe harbor to refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums." *Butero*, 174 F.3d at 1213 (emphasis in original).  The court found that the employer did more than the statute allowed: "it picked the insurer; it decided on key terms, such as portability and the amount of coverage; it deemed certain employees ineligible to participate; it incorporated the policy terms into the self-described summary plan description for its cafeteria plan; and it retained the power to alter compensation reduction for tax purposes. *Id.* at 1213-14 (specifically noting that the court "do[es] not hold here, because the question is not presented, that picking an insurer by itself could move an employer out of the safe harbor").  Because the company exceeded the allowed functions, it was not protected by the safe harbor. *Id.* at 14.

Another court in this circuit reached the same result on facts similar to those of the instant case.  In *Love v. Fortis Benefits Insurance Co.*, 120 F. Supp. 997 (M.D. Ala. 2000), the district court found that the employer "stepped over the line from neutrality to active endorsement." 120 F. Supp.2d at 1002 (citing *Stoudemire v. Provident Life and Acc. Ins. Co.*, 24 F. Supp. 2d 1252 (M.D. Ala. 1998).  The court stated:

> as [section 2510.3-(j)(3)] itself indicates, remaining neutral does not require an
> employer to build a moat around a program or to separate itself from all aspects of
> program administration.  Thus, as long as the employer merely advises employees
> of the availability of group insurance, accepts payroll deductions, passes them on
> to the insurer, and performs other ministerial tasks that assist the insurer in
> publicizing the program, it will not be deemed to have endorsed the program
> under [the regulation]. . . . It is only when an employer purposes to do more, and
> takes substantial steps in that direction, that it offends the ideal of employer
> neutrality and brings ERISA into the picture.

120 F. Supp. 2d at 1002-03 (citations omitted).  Based on this reasoning, the *Love* court found

that the employer was "significantly more involve[d]" than allowed for the safe harbor to apply.

*Id.* at 1003.  The court found the employer's involvement significant when it chose the insurer,

chose the policy to be provided and the deductibles to fund the plan, determined which

employees would be eligible to receive the benefit, paid a third-party administrator, assisted the

third-party administrator in the administration of the plan by submitting enrollment forms and

termination notices, and attempted to negotiate a change in the terms of the insurance policy.  *Id.*

Based on the law of this Circuit, Treat exceeded the functions allowed for protection by

the safe harbor.  Treat did more than simply permit Fortis to publicize the program and collect

premiums.  The employer's action effectively endorsed the plan.  Treat chose the insurer;

evaluated the policy's benefit and attempted to negotiate policy premiums; maintained blank

forms associated with the policy, included forms in "hire packets", explained the application and

premium rates, forwarded completed forms, and resolved administration problems associated

with the plan; determined whether to continue to offer the plan, and prepared and distributed

forms to employees offering options in coverage, premium payments, and termination; initiated

claims through their Human Resources Department, determined whether employees were

eligible for benefits, forwarded claim forms to employees, instructed employees how to complete

claim forms, forwarded completed claim forms to Fortis, received initial benefit checks, verified amounts, resolved discrepancies, and provided employee addresses for subsequent benefit checks; collected information and notified the insurer when coverage was due to end; retained and assisted a third-party administrator, and decided to terminate the policy.  Treat's actions go beyond permitting the insurer to publicize the program and collecting premiums.  Treat's endorsement of the policy and the safe harbor cannot protect the action from ERISA's reach. Plaintiff's Motion to Reconsider denial of the Motion to Remand is, therefore, to be dismissed.

Because the court finds that Treat exceeded the functions allowed by the safe harbor provision and endorsed the policy, ERISA controls.  Plaintiff's state law claims for fraud, bad faith, and outrage, are, therefore, preempted.  29 U.S.C. § 1144(c); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); *Gilbert v. Alta Heath & Life Ins. Co.*, 276 F.3d 1292 (11th Cir. 2001).  Defendant's Motion to Dismiss plaintiff's state law claims will be granted.

Although plaintiff seeks extra-contractual damages, her remedy is limited to benefits due under the plan; extra-contractual and punitive damages are not permitted.  *Bishop v. Osburn Transp., Inc.*, 838 F.2d 1173 (11th Cir. 1988), *cert denied*, 488 U.S. 832 (1988).  Defendant's Motion to Strike Claim for Extracontractual and Punitive Damages will thus be granted. Plaintiff also demands that her case be tried by jury.  The law of the Eleventh Circuit is well-settled that there is no constitutional or statutory right to trial by jury in an ERISA action.  *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 907 (11th Cir. 1997).  As a result, defendant's Motion to Strike Jury Demand will be granted.

## CONCLUSION

Plaintiff's claims are not exempted from ERISA's coverage by 29 C.F.R. § 2510.3-1(j). Therefore, ERISA preempts plaintiff's claims and provides a jurisdictional basis for removal. Accordingly, plaintiff's motion to reconsider the court's former denial of remand is to be denied. Because the court finds ERISA preemption, plaintiff's state law claims are to be dismissed. Plaintiff's claims for extra-contractual and punitive damages are to be stricken because such damages are not available and plaintiff's demand for trial by jury will be stricken because there is no constitutional or statutory right to a jury trial in an ERISA action.

An order denying Plaintiff's Motion to Reconsider denial of motion to remand and granting defendant's Motion for Partial Dismissal of Plaintiff's Complaint or, in the Alternative, Motion for Partial Summary Judgment on Counts II through IV of plaintiff's Complaint, Motion to Strike Claim for Extra-contractual and Punitive Damages, and Motion to Strike Jury Demand will be entered contemporaneously herewith.

**DONE** this 10th day of March, 2003.

**SHARON LOVELACE BLACKBURN**
United States District Judge